UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JOSEPH RANKIN, )<br>          Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, Acting )<br>Commissioner of Social Security, )<br>          Defendant. ) | No. 13 CV 50197<br>Magistrate Judge Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Joseph Rankin brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying him social security disability benefits based on his life-long cerebral palsy. For the reasons set forth below, the case is remanded.

### I. BACKGROUND

On February 24, 2010, Mr. Rankin applied for Title II disability benefits, alleging a disability as a result of cerebral palsy since December 31, 1995. R.19.

On December 14, 2011, a hearing before an administrative law judge was held. R. 29-64. The following summary merely sets forth the highlights of the hearing. The ALJ did not discuss any of the hearing testimony in her opinion. The only two witnesses were Mr. Rankin and his brother.

The ALJ conducted the initial questioning of Mr. Rankin. She asked about his education, work experience, and daily life. He testified that he completed high school and got a two-year degree from a local community college. He was 51, single, and had never been married. He had lived almost all his life in the family home, a one story ranch, living there with his mother until she passed away in 2009. R. 36-37.

In high school, Mr. Rankin got a job at a florist owned by a family friend, working there until 1995. This was the only full-time job he has ever held. He did things such as watering and transplanting but no office work. At that time, he could lift up to 20 to 30 pounds due to his cerebral palsy. R. 38-40.

At the time of the hearing, he could only lift 5 pounds, which was hard because of balance problems. He could sit no more than a half hour before needing to get up, and could stand for less than 15 minutes. He could walk about a block but felt a strain doing so. He had to use a cane or a walker. R. 40-44.

Shortly after the hearing, Mr. Rankin's attorney submitted a letter from Dr. Harry W. Darland dated December 14, 2011. It states:

> Mr. Rankin has been my patient since he was a teenager. He stopped working in 1996 because of the severe debility associated with his cerebral palsy. Since then he has needed assistance in walking with a cane and [on] occasions a walker. He is unable to do any type of work, even sedentary. This condition has caused him pain and stiffness on his muscles and joints in his upper and lower extremities causing difficulties in normal daily activities. The spasms, pain and stiffness keep him from any prolonged activity and his fine motor skills of his hands and arms are insufficient for any sort of work. He was, and still is, unable to work 8 hours a day, 5 days a week.
>
> The only work he has been able to do is help his mother during the last years of her life when she suffered from severe heart disease. I see him at frequent intervals and I am currently treating his recurrent skin cancer.
>
> His cerebral palsy disability has increased markedly because of his aging. It is my medical opinion that he has not been able to meet any requirements for work, sedentary or otherwise since 1997.

R. 379. Dr. Darland's office separately provided 24 pages of notes. R. 307-330.

On March 16, 2012, the ALJ denied the claim. The ALJ's opinion is five and a half pages, but the analysis portion consists of only the following seven paragraphs (the fourth one being the most relevant for this appeal because it relates to the treating physician rule):

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

A July 6, 1995 report from Rockford Health showed that the claimant had fallen down stairs hitting the right side of his head and causing a laceration. The claimant denied any visual disturbances, neck pain or neurological symptoms and was noted to be in "otherwise good health."

A report from January 28, 1998 revealed that the claimant had slipped and fallen hitting his head on furniture. He had no complaints of headaches, numbness, tingling or motor deficits. He was discharged with instructions to have stitches removed in 5 days (4F). Both of these reports identify the claimant falling and hitting his head and both reports fail to indicate that the claimant might be suffering from any other ailment and that his only difficulty was having a laceration to his head on both occasions.

Dr. Darland wrote on December 14, 2011 that the claimant stopped working in 1996 because of his cerebral palsy because of pain and stiffness to the muscles and joints in his body. This document is important and does provide the opinion of the treating source, which is generally given great weight. However, since there is not enough evidence that would support the opinion of the doctor for the period prior to December 1997[,] this opinion cannot be given any type of significant weight in order to find that the claimant is disabled.

A June 27, 2011 report from Dr. Smith noted that the claimant had an episode of atrial fibrillation and a recent ER visit on May 16, 2011 because of frequent palpitations but this report does not provide any evidence that would demonstrate that the claimant had any type of severe illness that would justify additional limitations to be ascribed for the period prior to December 31, 1997 which is the claimant's date last insured.

Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. In an August 11, 2010 Appeal's report form the claimant wrote that he continues to be capable of caring for his personal needs but that it is difficult and painful for him. This report supports the claimant's allegations of pain but also provide[s] a full picture that despite his pain the claimant remains independent and capable of performing his daily activities which further supports the assigned RFC.

The undersigned is cognizant that the claimant suffers from the progressive condition of cerebral palsy, but there is insufficient evidence in the file to support the severity of claimant's impairment required to preclude significant gainful activity for the period prior to the date last insured, December 31, 1997. Therefore a finding of not disabled is justified.

R. 22-23. After this analysis, the ALJ noted that Mr. Rankin's past work would preclude a job with lifting more than 20 pounds, that he had at least a high school education, and was 37 years old on the date last insured. R. 23. Based on these facts, she concluded that he had the residual functional capacity to perform the full range of sedentary work. R. 24.

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Mr. Rankin argues that a remand for a new hearing is required for three reasons. First, the ALJ failed to give controlling weight to the opinion of his long-time treating physician. Second, the ALJ violated SSR 83-20 by failing to consider the testimony of his brother, Matthew Rankin. Third, the ALJ relied on conclusory boilerplate language in making her credibility determination.

After reviewing these arguments, the Court finds that a remand is warranted because of a failure to apply the treating physician rule. This rule is based on 20 C.F.R. §404.1527(c)(2). Under this section, a treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. *Id.*; *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).

If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue¸* 555 F.3d 556, 561 (7th Cir. 2009). To make this determination, the ALJ must apply the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2). *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).[1] Failure to apply checklist is reversible error. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (ALJ disregarded checklist); *Moss*, 555 F.3d at 561 ("the choice to accept one physician's opinions but not the other's was made by the ALJ without any consideration of the factors outlined in the regulations"). Similarly, ALJs commit reversible error by simply stating that they considered the checklist without showing in their decisions that they did, in fact, consider them. *See Campbell*, 627 F.3d at 308 ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with [the checklist]. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."). In other words, ALJs must show their work.

---

[1] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Here, the ALJ did not follow this rule. Her explanation is only one sentence stating that she could not give "any type of significant weight" to Dr. Darland's opinion because "there is not enough evidence" that would support his opinion "for the period prior to December 1997." She provided no explanation for how she reached this conclusion. She did not apply the required checklist. For example, the ALJ did not make any findings about the length and nature of the treating relationship and even seemed to doubt whether Dr. Darland was treating Mr. Rankin in 1997. It is not even clear whether she agreed that Mr. Rankin had cerebral palsy then.

The ALJ failed to acknowledge or discuss evidence suggesting that Dr. Darland's treating relationship with Mr. Rankin was long-term, close, and ongoing. For example, Dr. Darland stated in his letter that he treated Mr. Rankin "since [Mr. Rankin] was a teenager." Given that Mr. Rankin was born in 1960, this would mean that the relationship began sometime in the 1970s, well before the critical date of 1997. Likewise, Mr. Rankin testified at the hearing that he sees Dr. Darland on "a regular basis," which means "[m]ore than once a year." R. 42. Dr. Darland referred in his letter to specific details about Mr. Rankin's life. In short, the long-term nature of this relationship was a key argument relied on by Mr. Rankin, but the ALJ never discussed it.

The ALJ also failed to analyze Dr. Darland's specific conclusions, such as the assertion that Mr. Rankin had "pain and stiffness in his upper and lower extremities" and that he had problems with his "fine motor skills of his hands and arms" that would preclude him from work. The latter assertion, in particular, required explanation in light of the ALJ's conclusion that Mr. Rankin could perform the full range of sedentary jobs.

The ALJ also did not consider in his opinion any of Mr. Rankin's testimony and how it may have supported Dr. Darland's conclusions. The ALJ noted that there was evidence Mr. Rankin suffered two falls, one in 1995 and one in 1998. The ALJ portrayed these as discrete events with no apparent connection to Mr. Rankin's cerebral palsy. However, at the hearing, Mr. Rankin testified that these falls were attributable to his condition and further explained that over the years he had fallen in his house "once every two or three weeks." R. 49. The ALJ did not consider this evidence when she concluded that Dr. Darland's opinion was unsupported. In sum, a remand is required under the treating physician rule because the ALJ failed to build a "logical bridge" to enable this Court to trace the path of her reasoning. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

The only question remaining is whether, as the government urges, the ALJ's decision could be affirmed under the harmless error rule. In its response brief, the government tries to rescue the ALJ's opinion by making numerous new arguments and relying almost primarily on evidence never discussed by the ALJ. But the Court concludes that, given the complete lack of explanation by the ALJ, applying the harmless error doctrine here would stretch that rule to its breaking point. This doctrine only applies when the court can conclude with certainty and great confidence that the ALJ would reach the same conclusion absent the error. *See Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010). The mere possibility that the ALJ would reach the same conclusion is not enough. *Id.* at 353 ("[T]he fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different outcome."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself

had not embraced"). Here, for the reasons set forth above, this Court cannot be certain that the ALJ would reach the same conclusion if the record is fully developed and analyzed. This is not to say that the government has not raised valid arguments in its brief. If Mr. Rankin is to succeed on remand, he will have to address these counter-arguments and possible weaknesses in his case. However, it would be premature and a waste of resources for this Court to sort through and analyze these arguments one by one in this opinion. Instead, it is better to let the parties and the ALJ to first consider these arguments on remand. Because a remand is required based on the ALJ's complete failure to follow the treating physician rule, this Court need not address Mr. Rankin's other two arguments.

### III. CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: December 17, 2014       By: _____
                              Iain D. Johnston
                              United States Magistrate Judge